DECISION
{¶ 1} Relator, Benjamin Coleman, requests a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying him permanent total disability compensation and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate determined that the commission did not abuse its discretion (1) in failing to address the report of Dr. Stoeckel, and (2) in concluding relator "has not involved himself in any program of remediation or rehabilitation designed to enhance or improve his ability to return to work." Accordingly, the magistrate determined the requested writ of mandamus should be denied.
 {¶ 3} Relator has filed objections to the magistrate's decision, rearguing those matters adequately addressed in the magistrate's decision. For the reasons set forth in the magistrate's decision, the objections are overruled.
 {¶ 4} Relator's objections initially contend the commission's order is deficient because it does not address the report of Dr. Stoeckel. As the magistrate properly noted, the commission had no obligation to specify the reports it considered, but only those on which the commission relied. Moreover, nothing in the record suggests the commission actually failed to consider Dr. Stoeckel's report.
 {¶ 5} Relator's objections also address the issue of rehabilitation. Again, the magistrate correctly pointed out that even if the commission's examination of the rehabilitation issue be incomplete, the commission's basis for denying relator's application for permanent total disability compensation is adequately stated: "[t]he commission relied upon the medical reports of Dr. Koppenhoefer and the vocational report Mr. Bronish to reach its conclusion that there are `employment options' immediately available to relator." (Magistrate's Decision, 12-13.)
 {¶ 6} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. For the reasons set forth in the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Sadler and Watson, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Benjamin Coleman, : Relator, : v. : : No. 03AP-258 Big Four Window Cleaning Company : (REGULAR CALENDAR) and The Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on October 6, 2003. IN MANDAMUS {¶ 7} In this original action, relator, Benjamin Coleman, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
 Findings of Fact {¶ 8} 1. On July 9, 1984, relator sustained an industrial injury while employed as a "window cleaner" or "laborer" with respondent Big Four Window Cleaning Company. On that date, relator was involved in a motor vehicle accident. The industrial claim is allowed for: "cervical, thoracic and lumbar strain; herniated cervical disc C6-7, left," and is assigned claim number 84-14839.
 {¶ 9} 2. On July 18, 2002, relator filed an application for PTD compensation. In support, relator submitted a report, dated July 15, 2002, from Luis F. Pagani, M.D., stating:
I would like to point out that his profession has been that of a window cleaner for 30 years prior to becoming disabled. There is no chance that he is a candidate for vocational rehab. He is now 57 years of age and should apply to the Bureau for permanent and total disability due to the conditions allowed on his claim of cervical strain and herniated cervical disc.
 {¶ 10} 3. Under the "education" section of the application form, relator indicated that the eighth grade is the highest grade of school he has completed, that he has not received a certificate for passing the General Educational Development ("GED") test, and he has not gone to a trade or vocational school or had any specialized training.
 {¶ 11} 4. The PTD application form asks the applicant: Have you ever par-ticipated in rehabilitation services?" To this query, relator responded in the negative and explained "BWC has already said my education wasn't enough."
 {¶ 12} 5. On September 27, 2002, relator was examined at the commission's request by Ron M. Koppenhoefer, M.D. Dr. Koppenhoefer reported:
Using the AMA Guides Fourth Edition, he would have the following degree of impairment:
* * * Lumbar strain would equal to a DRE Category II degree of impairment in the thoracal lumbar category. This would equal to 5% impairment.
* * * Cervical strain/herniated cervical disc C6-7 would equal to a DRE Cervical Thoracic Category IV degree of impairment and would equal to 25% whole person impairment.
The combination of this degree of impairment would equal to a total of 29% whole person impairment.
When taking into effect the allowed conditions in this claim, I see no evidence that would prevent Mr. Coleman was [sic] performing sedentary and light duty work at this time. His only restrictions for light duty work would be that lifting should be done with proper body mechanics and he should avoid repetitive turning of his neck/head as well as prolonged positioning of his head/neck in extension. In the sedentary position he should be able to change his position at will or for comfort.
 {¶ 13} 6. Dr. Koppenhoefer also completed a "physical strength rating" form on which he indicated that relator is able to perform "sedentary" and "light" work.
 {¶ 14} 7. The commission requested an employability assessment report from John M. Bronish, a vocational expert. The Bronish report, dated November 11, 2002, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation, or brief skill training.
(Emphasis sic.)
 {¶ 15} Indicating acceptance of Dr. Koppenhoefer's report and responding to the above query, Bronish lists the following "employment options" that relator can perform immediately:
* * * Information Clerk; Telephone Operator; Order Clerk, Food Beverage; Surveillance-System Monitor; Cafeteria Cashier; Credit Application Clerk; Receptionist; Final Assembly, Optical.
The Bronish report further states:
III EFFECTS OF OTHER EMPLOYABILITY FACTORS
 * * * Question: How, if at all, do the claimant's age,education, work history or other factors (physical, psychologicaland sociological) effect his/her ability to meet basic demands ofentry level occupations?
 Answer: Age: Writer does not view age to be valid determining factor for function.
Education: Claimant's Limited, 8th grade educational achievement, in addition to not receiving subsequent GED, presents as a negative educational profile regarding employability. This negative educational profile is not at all mitigated by claimant's further self-report of not being able to read or write or perform basic math functions well.
Work History: Claimant's self-reported 13-year Work History was in a number of jobs that range concerning Specific Vocational Preparation from Level 2/Unskilled to Level 3/Semi-Skilled and that ranged concerning Strength Capacity from Medium to Heavy.
* * *
 * * * Question: Does your review of background data indicatewhether the claimant may reasonably develop academic or otherskills required to perform entry level Sedentary or Light jobs?
 Answer: Background data indicates that claimant most probably would not even be successful should remediation be required in order for him to re-enter work force. Certainly no formal training activity would be considered to have a successful outcome. This point is somewhat moot, however, as the majority of jobs suggested in Section II herein are for the most part entry-level, Unskilled jobs; i.e., they require only short demonstration or no more than up to 30 days of On-The-Job Training in order to master.
 * * * Question: Are there significant issues regardingpotential employability limitations or strengths which you wishto call to the SHO's attention?
 Answer: The fact that claimant has not worked in over eighteen years, since 07/09/84 presents as an extremely debilitating factor regarding future employability.
* * *
B. WORK HISTORY
 Job Title * * * Skill Level Strength Dates
Window
Cleaner * * * 2 Unskilled Medium 1984
Store-Warehouse
Worker * * * 2 Unskilled Medium 72-75
Laborer * * * 3 Semi-Skilled Heavy Not noted
* * *
E. ADJUSTED WORKER TRAIT PROFILE:
 General Educational Development: (GED)
 Grade Level USDOL Level (R) Reasoning 4-6 2 (M) Math 1-3 1 (L) Language 1-3 1
(Emphasis sic.)
 {¶ 16} 8. In further support of his PTD application, relator submitted a vocational report, dated November 25, 2002, from psychologist Jennifer J. Stoeckel, Ph.D. In her report, Dr. Stoeckel wrote:
* * * Mr. Coleman indicates he was sent for rehabilitation through the Bureau of Workers' Compensation "but they couldn't help me because my education was at the 3rd or 4th grade level." * * *
 {¶ 17} In her report, Dr. Stoeckel states that she administered the Weschler Adult Intelligence Scale-III test and relator obtained verbal, performance, and full scale IQ scores of 76, 69, and 70, respectively. According to Dr. Stoeckel, those scores place relator "at the borderline range for intellectual functioning."
 {¶ 18} Dr. Stoeckel states that she also administered the Wide Range Achieve-ment Test-III ("WRAT-III") and that relator scored at the seventh grade level for reading and the fourth grade level for spelling and arithmetic. According to Dr. Stoeckel, based upon the WRAT-III scores, relator would have difficulty competing in entry level clerical positions. Dr. Stoeckel concluded her report stating:
Summarily, within reasonable vocational certainty, Mr. Coleman would be considered permanently and totally disabled based upon his allowed conditions, residual impairment, lack of transferable skills, age, limited 7th grade education, and significantly below average academic, intellectual, and vocational functioning as noted per formal testing. Mr. Coleman was an individual who relied pre-dominantly on his physical capacities for competitive employment. With his injuries he is significantly restricted and his vocational characteristics as noted above would preclude reemployment or any attempt at vocational rehabilitation.
 {¶ 19} 9. Following a January 30, 2003 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
All of the relevant medical and vocational reports on file were reviewed and considered in arriving at this decision.
This order is based upon the reports of Dr. Koppenhoefer and Mr. Bronish.
The injured worker sustained the injury that is recognized in this claim on 7-9-84. At that time the injured worker was employed as a window washer. The injury occurred when the injured worker was involved in an automobile accident. For many years the injured worker's treatment was conservative in this claim. The injured worker underwent surgery on 4-10-96. The injury occurred 18½ years ago when the injured worker was 39 years of age. The injured worker has never involved himself in any program of remediation or re-habilitation. The injured worker has not worked since the date of the injury.
Dr. Ron Koppenhoefer, physical medicine and rehabilitation, examined the injured worker on 9-27-02 at the request of the Industrial Commission. To Dr. Koppenhoefer the injured worker complained of a constant sharp pain involving the entire back which is aggravated by walking more than 10 minutes and sitting for more than 20 to 25 minutes. The injured worker further advised that his pain can radiate into both arms and legs and that the radiation is constant. He further advised that his arm and leg pain is made worse with physical activities. Dr. Koppenhoefer's examination findings are contained in his report. Dr. Koppenhoefer advised that the injured worker has reached Maximum Medical Improvement for the conditions that are allowed in his claim. Dr. Koppenhoefer opined that the allowed conditions would not prevent the injured worker from performing sedentary and light duty work. Dr. Koppenhoefer advised that the injured worker's only restrictions for light duty work would be that lifting should be done with proper body mechanics and that the injured worker should avoid repetitive turning of his neck/head, prolonged positioning of his head/neck and extension. He further advised that in the sedentary position the injured worker should be able to change his position at will. On the Physical Strength Rating Form that is attached to his report Dr. Koppenhoefer indicated that the injured worker could perform sedentary and light work.
The Staff Hearing Officer finds that the injured worker has reached Maximum Medical Improvement for the conditions that are allowed in claim number 84-14839. The Staff Hearing Officer further finds, based upon the report of Dr. Koppenhoefer, that the injured worker retains the physical functional capacity to perform employment activities which are sedentary to light in nature.
Mr. John Bronish, employability assessor, prepared an Employability Assessment Report for the Industrial Commission that is dated 11-11-02. Mr. Bronish advised that if he accepted the residual functional capacities opinion of Dr. Koppenhoefer the injured worker would be able to perform the following jobs immediately: information clerk; telephone operator; order clerk, food and beverage; surveillance system monitor; cafeteria cashier; credit application clerk; receptionist; and final assembly, optical. He further advised that the injured worker's age is not a valid determining factor for function. He further advised that the injured worker's limited education is a barrier to the injured worker with regard to employability. He noted that the injured worker's work history involves employment requiring a specific vocational preparation ranging from unskilled to semiskilled. He further advised that the injured worker would not likely be successful if remediation was required for him to return to work. He noted however, that the jobs that he listed as job possibilities for the injured worker are unskilled entry level jobs which require only short demonstration and no more than 30 days of on-the-job training to master. Mr. Bronish characterized the injured worker's work history as having involved unskilled and semiskilled skill level and medium and heavy strength level activities. He further advised that in his work history the injured worker has demonstrated 4th to 6th grade level reasoning and 1st to 3rd grade math.
The Staff Hearing Officer finds that the injured worker is 58 years of age with a 7th grade education and a work history which involves employment as a truck driver, a warehouse worker and a laborer. The Staff Hearing Officer further finds that the injured worker has no special training or special vocational skills. The Staff Hearing Officer further finds that the injured worker is able to read, and is able to write and perform basic math but not well.
The Staff Hearing Officer finds that the injured worker's age of 58 years is a moderate barrier to the injured worker with regard to his ability to return to and compete in the workforce. The Staff Hearing Officer further finds, however, that age taken alone is not a factor which would prevent the injured worker from returning to work. The Staff Hearing Officer further finds that the injured worker's limited education and academic skills are barriers to the injured worker with regard to his ability to return to work. The Staff Hearing Officer further finds, however, that the injured worker has always had limited academic skills and this skill level has not prevented the injured worker from working in the past. The Staff Hearing Officer further finds that not only have the injured worker's limited skills not prevented him from working, they have not prevented him from performing semiskilled employment activities. The Staff Hearing Officer further finds that the fact that the injured worker has learned to perform semiskilled activities in the past is evidence that the injured worker possesses the ability to learn to perform at least unskilled activities in the future. The Staff Hearing Officer accepts the residual functional capacities opinion of Dr. Koppenhoefer and finds that the injured worker retains the functional capacity to perform sedentary to light employment activities. The Staff Hearing Officer further finds that although the injured worker has not worked in the last 18½ years, and although the injured worker last worked at the age of 39 years, injured worker has not involved himself in any program of remediation or rehabilitation designed to enhance or improve his ability to return to work. The Staff Hearing Officer notes that at the age of 58 years the injured worker is no longer considered the traditional candidate for rehabilitation. The Staff Hearing Officer further finds, however, that there is no basis to determine that the injured worker would not be able to benefit from on-the-job training. The Staff Hearing Officer further finds, based upon the report of Mr. Bronish, that the job possibilities that Mr. Bronish lists would not require remediation but require only short demonstration or no more than 30 days of on-the-job training. The Staff Hearing Officer therefore finds based upon the reports of Dr. Koppenhoefer and Mr. Bronish that the injured worker could perform the following jobs: information clerk; telephone operator; order clerk, food and beverage; surveillance system monitor; cafeteria casher; credit application clerk; receptionist; and final assembler-optical.
The Staff Hearing Officer therefore finds that the injured worker is capable of performing sustained remunerative employment and is not permanently and totally disabled. Injured Workers' [sic] Application for Permanent and Total Disability, filed 7-18-02, is therefore denied.
 {¶ 20} 10. On March 18, 2003, relator, Benjamin Coleman, filed this mandamus action.
Conclusions of Law
 {¶ 21} Two issues are presented: (1) whether the commission's order is flawed because it fails to address the report of Dr. Stoeckel and other reports of record; and (2) whether the commission's order is flawed because there is a finding that relator "has not involved himself in any program of remediation or rehabilitation designed to enhance or improve his ability to return to work."
 {¶ 22} Finding no abuse of discretion with the commission's order, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
The first issue is easily answered. In State ex rel. Lovell v.Indus. Comm. (1996), 74 Ohio St.3d 250, 252, the court states:
State ex rel. Mitchell v. Robbins Myers, Inc. (1983),6 Ohio St.3d 481 * * *, directed the commission to cite in its orders the evidence on which it relied to reach its decision. Reiterating the concept of reliance, State ex rel. DeMint v.Indus. Comm. (1990), 49 Ohio St.3d 19, 20, * * * held:
"Mitchell mandates citation of only that evidence relied
on. It does not require enumeration of all evidenceconsidered." (Emphasis original.)
Therefore, because the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings (State ex rel. Brady v. Indus. Comm.
[1989], 28 Ohio St.3d 241 * * *) gives rise to a second presumption — that the commission indeed considered all the evidence before it. That presumption, however, is not irrebuttable, as [State ex rel. Fultz v. Indus. Comm. (1994),69 Ohio St.3d 327] demonstrates.
 {¶ 23} Here, the commission stated its reliance upon the medical reports of Dr. Koppenhoefer and the Bronish vocational report. The presumption is that the commission fully considered the report of Dr. Stoeckel and the other reports of record and found them to be unpersuasive. Lovell.
 {¶ 24} There is nothing in the record here to suggest that the commission actually failed to consider the report of Dr. Stoeckel as relator contends. Thus, the commission's order is not flawed simply because reports other than those of Dr. Koppenhoefer and Mr. Bronish were not mentioned.
 {¶ 25} Turning to the second issue, in State ex rel. Wilsonv. Indus. Comm. (1997), 80 Ohio St.3d 250, 253-254, the court held:
We view permanent total disability compensation as compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed. Thus, it is not unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve reemployment potential. While exten-uating circumstances can excuse a claimant's nonpar-ticipation in reeducation or retraining efforts, claimants should no longer assume that a participatory role, or lack thereof, will go unscrutinized.
 {¶ 26} At issue here is the following two portions of the commission's order. Early on, the order states:
* * * The injury occurred 18½ years ago when the injured worker was 39 years of age. The injured worker has never involved himself in any program of remediation or rehabilitation. The injured worker has not worked since the date of the injury.
 {¶ 27} In the second to last paragraph, in a somewhat repetitive fashion, the order states:
* * * The Staff Hearing Officer further finds that although the injured worker has not worked in the last 18½ years, and although the injured worker last worked at the age of 39 years, injured worker has not involved himself in any program of remediation or rehabilitation designed to enhance or improve his ability to return to work. * * *
 {¶ 28} In challenging the commission's findings, relator relies heavily upon the Statement of Facts prepared by a commission claims examiner for a previously filed PTD application. The Statement of Facts is dated June 1, 1998, and states:
Claimant was never referred for Rehab offered by BWC.
Claimant has never participated in Rehabilitation Services due to chronic pain and IQ per IC-2 application.
 {¶ 29} Relator describes the commission's finding regarding remediation/-rehabilitation as "an incorrect conclusion based upon incorrect facts." (Relator's brief at 8.)
 {¶ 30} Relator claims that he has never been offered an opportunity to participate in rehabilitation services by the Ohio Bureau of Worker's Compensation because of medical and educational reasons. However, relator does not actually deny that he in fact has never involved himself in any program or remediation/rehabilitation designed to improve his ability to return to work. Thus, the commission's findings are not inaccurate.
 {¶ 31} What relator seems to be arguing here is that the commission failed to explore in its order the reasons why relator has not involved himself in any program of remediation or rehabilitation.
 {¶ 32} In the magistrate's view, even if viewed as being incomplete, the commission's finding regarding remediation/rehabilitation does not add to or subtract from the commission's stated basis for denial of the PTD application. The commission relied upon the medical reports of Dr. Koppenhoefer and the vocational report of Mr. Bronish to reach its conclusion that there are "employment options" immediately available to relator. Those "employment options" are immediately available to relator regardless of whether relator can somehow justify being unemployed for 18 and one-half years without involving himself in any program of remediation or rehabilitation.
 {¶ 33} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.